# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| **LEOTIS COLEMAN** | * | **CIVIL ACTION NO. 04-2395** |
| **VERSUS** | * | **JUDGE JAMES** |
| **JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Plaintiff, Leotis Coleman ("Coleman"), appeals from a decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. The appeal was referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons given below, it is recommended that the decision of the Commissioner be **AFFIRMED, and that this matter be dismissed with prejudice.**

Introduction

Coleman applied for disability benefits due to heart problems; high blood pressure; dizziness; back pain; and numbness in his hands, fingers, and legs. Coleman was 57 years old at the time of the Commissioner's decision. He has a limited education and past work experience as a laborer/construction worker, heavy equipment operator, and painter. Administrative Law Judge ("ALJ") Charles R. Lindsay denied Coleman's claim (Tr. 13-14), and the Appeals Council found no basis to review the decision. Coleman then filed this judicial appeal.

Standard of Review; Substantial Evidence

This Court will uphold an ALJ's determination that a claimant is not disabled if the findings of fact upon which it is based are supported by substantial evidence, and if it was derived from a proper application of relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38

F.3d 232, 236 (5th Cir. 1994). While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Secretary of Health and Human Services has established a five-step sequential evaluation process for ALJs to utilize in determining whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The United States Court of Appeals for the Fifth Circuit, in *Loza v. Apfel*, succinctly summarized this evaluation process:

> The first two steps involve threshold determinations that the claimant is not presently engaged in substantial gainful activity and has an impairment or

> combination of impairments which significantly limits his physical or mental
> ability to do basic work activities. In the third step, the medical evidence of the
> claimant's impairment(s) is compared to a list of impairments presumed severe
> enough to preclude any gainful activity. If the claimant's impairment matches or
> is equal to one of the listed impairments, he qualifies for benefits without further
> inquiry. If the person cannot qualify under the listings, the evaluation proceeds to
> the fourth and fifth steps. At these steps, analysis is made of whether the person
> can do his own past work or any other work that exists in the national economy, in
> view of his age, education, and work experience. If he cannot do his past work or
> other work, the claimant qualifies for benefits.

219 F.3d 378, 390 (5th Cir. 2000) (internal citations omitted). The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). If at any point during the five-step review the ALJ finds the claimant disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In this case, Coleman has taken issue with no particular step of the above analysis; rather, the errors Coleman alleges stem from the ALJ's failure to hold a hearing. First, Coleman alleges that the ALJ did not comply with the Commissioner's regulations and procedures for foregoing with a hearing and therefore prejudiced him by failing to fully develop the record, denying him the opportunity to rebut the evidence, and precluding an accurate credibility determination. Second, Coleman alleges that he did not properly waive his right to counsel because the ALJ did not inform him of the limitation on attorneys' fees and did not properly advise him of his rights. Finally, Coleman insists that the ALJ's credibility determinations are erroneous because they were not based on live testimony from a hearing and are not supported by objective medical

evidence.

Waiver of Hearing

Section 405(b) of Title 42 of the United States Code entitles Social Security claimants to "reasonable notice and opportunity for a hearing" with respect to the Commissioner's decision. 42 U.S.C. § 405(b) (2005); 20 C.F.R. § 416.1450(a) (2005). Claimants, however, may forfeit this right by making a knowing and voluntary waiver. *See* 20 C.F.R. § 416.1450(b). Social Security Ruling ("SSR") 79-19 specifies conditions necessary to "ensure . . . waivers are made voluntarily and knowingly; i.e., with knowledge of the advantage of personal appearance and the consequences of a waiver of the right to appear at the hearing."[1] Soc. Sec. Rul. 79-19. The Commissioner's *Hearings, Appeals and Litigation Law Manual* (HALLEX) also mandates that, upon a claimant's initial attempt at waiver, the Commissioner or ALJ must fully inform the claimant of the consequences of waiver and "obtain written documentation of the claimant's

---

[1] In recognition of the likelihood that some claimants had jeopardized their benefit rights by waiving a hearing, the Commissioner issued SSR 79-19. To curb this increase of uninformed waivers, SSR 79-19 requires a claimant to submit a signed writing which shows that:
    1. a thorough explanation of the hearing has been given;
    2. the right to personal appearance at the hearing to testify and present evidence has been explained;
    3. an explanation has been given of the right to representation at the hearing by an attorney or other person of the individual's choice;
    4. it has been explained that, in some cases, additional evidence obtained thorough oral testimony and personal presence before the presiding officer may be of value in evaluating the issues;
    5. the individual has been advised that, if he or she does not appear, the claim will be decided solely on the written evidence then in file plus any additional evidence submitted by the individual or the representative or obtained by the hearing officer;
    6. the individual has been advised that he or she may withdraw the waiver of the right to appear at the hearing at any time prior to mailing of the notice of the decision.

election on a Form HA-4608, Waiver of Right to Oral Hearing."[2]  HALLEX I-2-1-45 (June 30, 1994).  Invalid waivers warrant remand for a new hearing only if the plaintiff suffered prejudice.  *See, e.g., Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. 1981).

Coleman alleges that the ALJ erred when he declined to hold a hearing because his waiver was obtained in violation of SSR 79-19 and HALLEX, specifically the requirement that a claimant be informed that waiver will result in a decision based on the only on the written evidence.  A review of the record, however, demonstrates that Coleman received a letter from the Office of Hearings and Appeals ("OHA") outlining the hearing procedure and his right to representation.  Tr. 36-37.  Furthermore, Coleman's Request for Hearing by Administrative Law Judge, Form HA-501, where he first indicated that he did not desire a hearing, contains a section outlining his right to representation and states, "If you are not represented but would like to be, your Social Security office will give you a list of legal referral and service organizations."  Tr. 34.  Similarly, Coleman completed and signed Form HA-4608, Waiver of Right to Oral Hearing, the

---

[2] HALLEX provides, in pertinent part, as follows:

If a claimant states in the request for hearing (RH) that he or she waives the right to appear at a hearing, or otherwise notifies the hearing office (HO) that he or she intends to waive the right to appear, the ALJ or the HO staff must take the following actions:

  1.  If the claimant is unrepresented, advise the claimant of the right to representation.

  2.  Advise the claimant of the advantages of appearing at a hearing; ensure that the claimant is fully advised of the possible consequences of his or her waiver; and explain that even though he or she has waived the right to appear, the ALJ may schedule and conduct a hearing if the ALJ deems it necessary.

  3.  If the claimant still elects to waive the right to appear at a hearing, obtain written documentation of the claimant's election on a Form HA-4608, Waiver of Right to Oral Hearing. To access Form HA-4608, access the Document Generation System (DGS), click on "Correspondence," then click on "Prehearing" and then click on "Waiver of Oral Hearing."

exact form that HALLEX requires for a valid waiver, in which he declared:

> I have been advised of my right to appear in person before an Administrative Law Judge. I understand that my personal appearance before an Administrative Law Judge would provide me with the opportunity to present written evidence, my testimony, and the testimony of other witnesses. I understand that this opportunity to be seen and heard could be helpful to the Administrative Law Judge in making a decision.
>
> Although my right to a personal appearance before an Administrative Law Judge has been explained to me. I do not want to appear in person. I want to have my case decided on the written evidence. The reason I do not want to appear in person a hearing is:
>
> I understand that if I do not appear before an Administrative Law Judge, I still have the right to present a written summary of my case, or to enter written statements about the facts and law material to my case in the record.
>
> If I change my mind and decide to request a personal appearance before the Administrative Law Judge, I understand that I should make this request to the Hearing Office **before** the decision of the Administrative Law Judge is mailed to me.
>
> I understand that I have a right to be represented and that if I need representation, the Social Security office or hearing office can give me a list of legal referral and service organizations to assist me in locating a representative.

Tr. 34 (emphasis in original). These declarations sufficiently address all the requirements enumerated in SSR 79-19, including, despite Coleman's claim to the contrary, that his claim would be decided on the written evidence in his file. The second paragraph clearly states, "I want to have my case decided on the written evidence." Accordingly, there is no evidence that Coleman's waiver was obtained in violation of SSR 79-19 or HALLEX.

Coleman's claim that he did not knowingly and intelligently waive his right to a hearing is also without merit. Substantial evidence refutes his contention, as stated in an affidavit, that he did not read and understand the declarations in Form HA-4608, Waiver of Right to Oral Hearing, and that he merely signed it because it "was something that needed to be signed in order to process his claim." Coleman's Affidavit, ¶4. The record is replete with documents and

6

forms Coleman completed that required him to provide explanatory answers to comprehensive questions dealing with his limitations, prior work history, medications, and disagreement with the Commissioner's initial denial of benefits. Tr. 34, 45-54, 55-62.  The record also contains a letter Coleman wrote describing his condition and impairments.  Tr. 75-77.  This evidence clearly demonstrates Coleman's ability to comprehend his situation and intelligently respond to basic forms, and it sufficiently demonstrates that he knowingly and intelligently waived his right to a hearing.

Although Coleman's valid waiver obviates any inquiry into whether or not he was prejudiced, it is worth noting that Coleman's alleged instances of prejudice are insufficient.  A showing of prejudice requires a claimant to show that he "could and would have adduced evidence that might have altered the result."  *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).  Despite his allegations that the ALJ failed to obtain records of his alleged incontinence, an examining physician's progress report, and other medical records, Coleman has yet to show that any of this evidence presently exists or is available.  Furthermore, there is no indication that this omitted evidence would have conflicted with the ALJ's findings and therefore obtained a different result.  Merely stating that "it is difficult to believe that had Dr. Smith [Coleman's examining physician] been asked, he would have agreed" with the ALJ's residual functional capacity ("RFC") assessment, is insufficient to demonstrate prejudice, especially without any supporting medical evidence.[3]  Additionally, Coleman's complaints that the ALJ denied him an

---

[3] As additional evidence of the ALJ's failure to develop the record, Coleman alleges that the RFC assessment in the record was not completed by a physician and therefore violates 20 C.F.R. § 404.1546.  His conclusion that it was not completed by a physician is based its placement in a section of the record other than the section labeled "medical records."  This claim is wholly without merit.  Placement of a RFC assessment in a particular part of the record, without more, is not a basis to conclude that it is invalid and merits reversal.

7

opportunity to personally appear for purposes of establishing his credibility and rebutting a physicians opinion are moot because he properly waived any such appearance. Regardless, credibility determinations do not necessarily require a claimant's personal appearance, especially when, as here, there is no medical evidence confirming the claimant's complaints and limitations. *See* 20 C.F.R. §§ 404.1529; 416.929.

Waiver of Counsel

A claimant has a statutory right to counsel at a Social Security hearing pursuant to 42 U.S.C. § 406. As with a right to a hearing, a claimant may also waive the right to counsel provided that the Commissioner provides the claimant with sufficient information to enable him to decide intelligently whether to retain counsel or proceed pro se. *Clark v. Schweiker*, 652 F.2d 399, 403-04 (5th Cir. 1981). "Sufficient information" includes three things: (1) the manner in which an attorney can aid in the proceedings; (2) the possibility of free counsel or a contingency arrangement; and (3) the limitation of attorneys' fees to 25 percent of past due benefits and the required court approval of the fees. *Id.* at 403. Coleman alleges that his waiver of counsel was invalid because the ALJ did not properly inform him of his right to representation. Specifically, Coleman lists two errors: (1) the ALJ did not inform him that attorneys' fees were limited to 25% of past due benefits and required court approval; and (2) the ALJ did not notify him of his right to counsel in writing and orally at a hearing.

As to Coleman's first alleged error, the lack of notice about attorneys' fees, a review of the record demonstrates that the Commissioner provided Coleman with specific notice about his right to counsel and the limitation on attorneys' fees. As quote above in regard to Coleman's waiver of a hearing, a section of Coleman's completed Form HA-4608, Waiver of Right to Oral Hearing, provides:

8

> I understand that I have a right to be represented and that if I need representation, the Social Security office or hearing office can give me a list of legal referral and service organizations to assist me in locating a representative.

Tr. 34. Furthermore, the Commissioner's letter to Coleman notifying him of the initial denial of his application for benefits specifically states that "[i]f you hire someone, we must approve the fee before he or she can collect it. And if you hire a lawyer, we will withhold up to 25 percent of any past due Social Security benefits to pay toward the fee." As is apparent from the language above, Coleman was sufficiently apprised of his right to counsel and made a valid waiver.

As another basis for reversal, Coleman cites case law requiring the ALJ to notify him of his right to counsel "in writing in advance of the hearing as well as orally at the hearing itself." Pl.'s Brief, p.9. Regardless of whether the ALJ was required to do so, Coleman, as stated above, waived his right to a hearing and therefore had no opportunity to receive oral notice of his right to counsel. Furthermore, the law does not require an ALJ to hold a hearing, despite a claimant's waiver, merely to inform the claimant of his right to counsel.

ALJ's Credibility Findings

Coleman insists that the ALJ's unfavorable credibility determinations are not supported by objective medical evidence and were, in part, based on facts not contained in the record. Coleman cites a January 8, 2004, x-ray report from the record, which established that he had "moderate osteophyte formation on almost all the lumbar vertebrae and severe osteosclertoic changes on the dorsal prcesses of L3-L4 and L5," "total bipolar prosthesis resent replacing the right hip bone," and "mild osteoarthritis of the left hip with mild irregularities of the acetabulum and mils ostesclerotic changes of the acetabulum." Tr. 87. This, Coleman claims, demonstrates

9

that the ALJ credibility determinations are not based on substantial evidence.

While this x-ray report indeed shows that Coleman's back and hip pain rose to mild, moderate, and even severe levels, it is but one piece of the record. The ALJ cited numerous other medical evidence that did not support Coleman's alleged inability to perform any work-related activities due to severe back, hip, and chest pain, including physical tests illustrating good motor strength and range of motion, and a physician's opinion that Coleman was malingering. Tr. 18. Additionally, Richard D. Smith, Jr., M.D., Coleman's examining physician, reported on two separate occasions that Coleman, while suffering from degenerative joint disease, could move all of his extremities well. Tr. 79-80. At no time did Smith report any physical limitation or inability to perform work-related activities. The RFC assessment in the record also indicates that Coleman was capable of performing substantial work activities, including those associated with his past relevant work. While Coleman complains that the ALJ misstated that he had "admitted that injections and anti-inflammatory medicines improved his pain," this alone does not mean that the ALJ's decision is erroneous. The ALJ cited substantial medical evidence supporting his conclusion that Coleman, while suffering from severe impairments, maintained the RFC to perform his past relevant work and, therefore, was not disabled.

**For the reasons stated above, it is recommended that the Commissioner's decision to deny benefits be AFFIRMED, and that this civil action be DISMISSED with Prejudice.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection

or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 28th day of November, 2005.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE